## LONE STAR COTTON MILLS v. THOMAS.

### No. 4687.

Court of Civil Appeals of Texas. El Paso.

Oct. 26, 1949.

Rehearing Denied Dec. 7, 1949.

302

Burges, Scott, Rasberry & Hulse, El Paso, for appellant.

Ernest Guinn, El Paso, for appellee.

PRICE, Chief Justice.

This is an appeal from the District Court of El Paso County, 41st Judicial District. Carl W. Thomas, as plaintiff, instituted this suit against the Lone Star Cotton Mills as defendant, seeking damage for breach of contract and for failure of the defendants to comply with an arbitrator award. The trial was to the court with a jury, the submission on special issues. On the verdict of the jury the court entered judgment in favor of plaintiff in the sum of $2,780 with interest thereon from April 22, 1949. From this judgment the defendant has duly perfected its appeal.

Plaintiff's asserted cause of action is founded on a contract which he alleges was made for his benefit between defendant and United Textile Workers of America, American Federation of Labor. This contract was entered into on the 19th day of December, 1946, and provided it should remain in full force and effect until December 19, A.D. 1947, and should automatically continue beyond said date for one year or more "unless either party to this agreement gives the other party thereto written notice of its desire to alter, revise or terminate this agreement at least thirty days prior to any anniversary date."

It is not deemed necessary to set this contract out in full, but certain parts will be reproduced verbatim. It provides that defendant recognizes the United Textile Workers of America as the exclusive bargaining union. Par. 3, art. 1 provides as follows: "It is specifically agreed and understood that this agreement does not include workers, foremen, overseers, or any other employe who does not come within the jurisdiction of the union."

Paragraph 2, art. 2 provides: "It is further specifically understood and agreed that the company retains the sole right of hiring and discharging employees; Provided, However, that Employees who have Completed their Trial Period shall be Discharged for Just Cause Only. The Union shall have the Right to Challenge the Propriety of any Discharge or may Present the same as a Grievance under the Grievance and Arbitration Procedure Hereinafter Provided for. It is further understood and agreed that all employees during the first 60 days of their employment shall be on trial and may be discharged by the company for any reason."

The contract in substance further provides:

"An employee shall have seniority in accordance with the length of their employment with the company; that when layoffs are necessary it is provided in substance to be subject to leave on the basis of departmental seniority. Seniority shall nevertheless be retained and shall displace a junior employee with less seniority in any department provided the senior employee is capable of doing the work required in the other department.

"Laid off employees shall retain their seniority with the company for a period of one year."

Paragraph 2, art. 8 provides: "If an employee covered by this agreement feels that he has been unjustly disciplined, discharged or discriminated against, he shall have the right to grievance procedure agreed upon."

It is deemed necessary to set forth art. 9 of the agreement in full.

"*Article IX. Adjustment of Disputes.*

"1. For the purpose of promoting harmony and uninterrupted work in the Mill, the Shop Committee, as provided for herein, is set up by the Union for the purpose of settling and adjusting disputes or grievances that may arise during the term of this Agreement.

"2. When a dispute or grievance arises, the aggrieved shall attempt to settle the dispute or grievance with his immediate supervisor; if a satisfactory settlement cannot be reached, the aggrieved shall take the matter to the Shop Steward, or Shop Committeeman, who shall take up the dispute or grievance with the Company's Superintendent in accordance with the provisions of Paragraph 3 of Article VIII of this Agreement. If a satisfactory settlement cannot be reached with the Superintendent, then the parties shall call upon a representative of the United Textile Workers of the American Federation of Labor in an effort to reach a satisfactory settlement, and any settlement so reached shall be final and binding upon both parties.

"3. If a satisfactory settlement of the dispute or grievance cannot be reached or effected under the provisions of paragraph 2 of this Article, then the matter in dispute shall be submitted to a Board of Arbitration, which shall be selected in the following manner: the Company shall select two members of the Company to represent it and the Union shall select two members to represent the Union, and the four persons so selected shall make an effort to reach a satisfactory settlement of the dispute or grievance, and, if such satisfactory settlement is so effected by them, the same

shall be binding upon both parties and shall be final.

"4. If a satisfactory settlement of the dispute or grievance cannot be reached or effected under the provisions of paragraph 3 of this Article within two (2) days after the selection of the Board of Arbitration, as in said paragraph 3 provided, then, in such event, said Board of Arbitration shall call upon the Conciliation Department of the United States Department of Labor to appoint a fifth member of said Board of Arbitration, who shall act as Chairman of said Board. Said Board shall then hear the evidence of the dispute or grievance, each side having the privilege of presenting witnesses in support of its contentions, and, when both sides have been heard, the Board shall, by a majority vote, decide and settle the matter in accordance with the evidence presented to it. The decision of such Board shall be final and binding upon both parties to this Agreement."

On April 15, 1947, the defendant discharged the plaintiff, who had been an employee of defendant for about eight years. The alleged ground of his discharge was that plaintiff had laid his hands upon the person of Rosalia Lozano, a female employee. We take it that it was charged he laid his hands upon her in an indecent or lascivious manner. The other party to the contract, in accordance with the contract presented a grievance to the defendant on behalf of the plaintiff and others. On the 22nd day of May the law firm of Burges, Scott, Rasberry and Hulse, acting through J. F. Hulse and duly authorized by the defendant, wrote the following letter to George Webber, the duly authorized agent of the United Textile Workers of America, the other party to the contract governing the rights of defendant and its employees who were entitled to be represented by the union:

"Mr. George Webber
"223 South Oregon Street
"El Paso, Texas.
"Dear Mr. Webber:

"This will confirm my telephone conversation with you this afternoon in which I advised you that after talking with Mrs. Scott of the Lone Star Cotton Mills, Inc., the Lone Star Cotton Mills, Inc. is willing to arbitrate the grievances presented by you with respect to the following named persons, to-wit:

"Julio Carillo
"Maria Ortiz
"Juan Balderrama
"Juan Rodriguez
"Evaristo Cruz (transfer case)
"Carl W. Thomas.

"The understanding between us is that we will omit the appointment and hearing before the four man Board of Arbitration, provided for in the contract between the Company and the Union, and that you may request the Director of the United States Conciliation Service to designate an arbitrator to hear and pass upon these grievances.

"Since this arbitration proceeding will be held at your request, any and all costs and expenses in connection therewith shall be borne by the Union.

"Yours very truly,
"Burges, Scott, Rasberry & Hulse,
"By (Sgd.) J. F. Hulse.
"JFH/gg
"cc–Joseph Vincent
"cc–Lone Star Cotton Mills."

The proposition contained in this letter was duly accepted by the said Union acting on behalf of plaintiff. In accordance with the terms of the letter and with the agreement of both defendant and the Union, Clifford W. Potter, Esq. was duly appointed Arbitrator. A hearing was held on plaintiff's grievance on the 8th day of September, 1947, at which the plaintiff and defendant appeared and introduced evidence and made arguments in support of their respective contentions. The Arbitrator thereafter made an award as follows: "Carl W. Thomas was not discharged for just cause and he is to be reinstated with full back pay, less any amount he may have earned in other employment since April 15, 1947."

In his discussion of the facts the Arbitrator in substance found that Thomas did place his hand on the shoulder of Rosalia Lozano, an employee of defendant; that it

was done in the presence of numerous persons and that Rosalia did not appear to be angered thereby. It is fairly inferable from the analysis of the evidence that plaintiff's conduct toward his fellow employee, Rosalia Lozano, was neither lascivious nor indecent. The Arbitrator further found that plaintiff was not regularly assigned as a second hand on April 15, 1947, and therefore was not then a supervisor, and that Section 3 of Art. 1 was not applicable in his case, and he was entitled to present the grievance as a member of the Union. The defendant did not nor has not in any way complied with the award of the Arbitrator. On October 15, 1947, defendant sent the following letter to plaintiff:

"Mr. Carl W. Thomas, Sr.,
"611 N. El Paso Street
"El Paso, Texas.
"Dear Mr. Thomas:—

"This will confirm the fact that this Company declines to have you as its employee.

"The arbitration agreement in the contract between the Company and the Union does not cover supervisory employees, and, as you were a supervisory employee, it did not cover you. The question of whether you were a supervisory employee at that time was not submitted to the Arbitrator, and he, therefore, had no authority to pass upon it.

"Furthermore, if a court of competent jurisdiction should hold that by reason of the Arbitrator's decision and award in your case, you were reinstated to your job with this Company, then it is here stated by us that you were reinstated to the job of second hand, and if you had gone back to work, you would have gone back to work as second hand, which is employment in a supervisory capacity.

"This is to advise you that in the event it should ever be held that you were so reinstated by the said award, then you are hereby again discharged from the employment of this company.

"Very truly yours,
"H. K. Scott,
"Lone Star Cotton Mills Inc.
"HKS/mc"

The second paragraph of this letter in a measure presents defendant's contentions made here. As to this letter, defendant contends that same amounted to a reinstatement of plaintiff and it was thought this comprehends the contention that it was a compliance with the award to the extent of reinstatement. Paragraph 7 of defendant's trial amendment seems to so assert, as does its 9th point of error.

 The primary source of the duties between plaintiff and defendant is the contract of December 19, 1946. How long this contract governed the relations of members of the Union employed by the defendant is one of the questions presented in this appeal. As evidencing the termination of this contract on the 19th day of December, 1947, the defendant introduced in evidence the following letter:

"October 28, 1947
"To the United Textile Workers of America, A. F. of L. Local No. 156
"P. O. Box 301,
"El Paso, Texas.
"Gentlemen:

"We acknowledge receipt of your letter of October 15th, 1947, stating your desire to negotiate a new contract between you and the Company.

"We not only take your letter to be a termination of the existing contract between us, but we also hereby give you notice, pursuant to the provisions of Article XIV of said contract, that this Company hereby terminates said contract at the end of the term thereof, to-wit December 18th, 1947.

"Yours very truly,
"Lone Star Cotton Mills Inc.
"(Sgd.) H. K. Scott."

This letter of defendant refers to a purported letter of the Union dated October 15, 1947, which letter is stated to express a desire to negotiate a new contract. If the letter of the Union be as stated in defendant's letter to the Union, then the letter of the Union described was sufficient to terminate the contract. It is to be noted that the contract in this respect provides that it "shall automatically continue beyond the

said date for one year or more unless either party to this agreement gives the other party hereto written notice of its desire to alter, revise or terminate this agreement at least thirty days prior to any anniversary date." The statement of defendants relies entirely on its letter as terminating the contractual relations between defendant and the Union and does not seem to contend that the Union gave the notice stated in defendant's letter. The statement in defendant's letter that the Union had in writing stated a desire to negotiate a new contract is hearsay, and of no probative force. Defendant's letter was not introduced in evidence on the trial of the case before the jury, but on the hearing on the motion for judgment. In our opinion the letter does not constitute a part of the Statement of Facts proper in this case. Furthermore, the Statement of Facts, so far as reference to the Statement is made, does not evidence that the letter was ever mailed to or received by the Union, or delivered to it. The mere writing of a letter unless same were mailed to or otherwise delivered to the Union would not terminate the contract.

Before considering the arbitration procedure involved, it is deemed necessary to construe the contract between the union and defendant. This contract, it is elementary, was for the benefit of plaintiff and he was entitled to enforce same. This contract in no way limits the power of defendant to discharge at will either supervisory or nonsupervisory employees who are members of the Union. It does limit the legal right of defendant to discharge non-supervisory employees who are members of the union. "After the expiration of their trial period of 60 days non-supervisory employees members of the Union may be discharged for *just cause only.*"

The term "just cause" has no doubtful meaning. It means a breach of a contract of employment by the employee.

■■ If the above be a correct determination of the legal effect of the contract as to the power to discharge, it follows that an employee protected by the contract, unjustly discharged or discharged without just cause, cannot insist on reinstatement.

If defendant broke the contract by unjustly discharging him, the defendant cannot be compelled under the contract to reinstate him. An offer to reinstate would not discharge the liability for the breach of same in discharging him.

■ No manner of doubt is entertained that if plaintiff at the time charged, on, to wit, April 15, 1947, laid his hands on the person of his fellow employee Rosalia Lozano in an indecent or lascivious manner, that such conduct would afford under the contract just cause for his summary discharge. Every male employee who in the course of his employment comes in contact with female employees impliedly contracts with his employer to conduct himself in a decent and seemly manner toward his female co-employees. A breach of his contract in this respect legally justifies his discharge.

■■ Further, it is thought that touching of the person of a female employee would not constitute in every case a just ground of discharge of an employee. Under the evidence before the arbitrator and before the trial court it was a question of fact whether plaintiff's conduct toward his co-employee Rosalia Lozano was either unseemly or indecent. The mere placing by plaintiff of his hand on the shoulder of Rozalia Lozano in a spirit of comaraderie at least presents an issue of fact as to whether or not it presented a just ground for his discharge. Plaintiff's testimony was to effect he merely placed his hands on the shoulder of Rozalia Lozano. This was done openly and in the presence of numerous persons. In our opinion, adopting the plaintiff's testimony as to the transaction between plaintiff and Rozalia Lozano it did not present a just cause for discharge.

Defendant attacks the award of the Arbitrator because the award was not complete in that it did not determine that plaintiff was entitled to any sum of money; further that the contract under which the arbitration was held did not apply to supervisory employees. The admission in evidence of the award by the trial court is complained

of by a point of error because the court submitted special issue No. 2 as to whether plaintiff was discharged without just cause.

The settlement of controversy by arbitration is favored by law. Sec. 13, art. 16 of our Constitution, Vernon's Ann.St., provides: "It shall be the duty of the Legislature to pass such laws as may be necessary and proper to decide differences by arbitration, when the parties shall elect that method of trial."

In pursuance of such Constitutional mandate the Legislature passed Articles 224 to 238 V.A.C.S. A statutory arbitration is provided for in these articles. However, art. 238 provides: "Nothing herein shall be construed as affecting the existing right of parties to arbitrate their differences in such a mode as they may select." See also Johnson v. Korn, Tex.Civ.App., 117 S.W. 2d 514, Wr.Ref.; Brazoria County v. Knutson, 142 Tex. 172, 176 S.W.2d 740.

Arbitration is contractural in nature. An agreement to arbitrate differences implies an agreement to abide by and conform to the award made in accordance with the agreement. Alexander v. Fletcher, 206 Ark. 906, 175 S.W.2d 196, 198.

Here there is no necessity to rely on implication. The contract under which this arbitration was held provides "The decision of the Board shall be final and binding upon both parties to this agreement."

It is elementary that the award should determine the matter submitted under the contract for arbitration. 6 C.J.S., Arbitration and Award, § 80, p. 219; 6 C.J.S., Arbitration and Award, § 81, p. 226.

If the award goes beyond this to that extent same is void. 6 C.J.S., Arbitration and Award, § 89, p. 234.

An award should determine the matter submitted by the agreement of arbitration.

The clause of the contract as to what may be arbitrated has been heretofore copied. The privilege is conferred upon the Union to challenge the propriety of any discharge, or may present the same as a grievance under the grievance and arbitration procedure hereinafter provided for. The plaintiff's grievance as that he was unjustly discharged by defendant on April 15, 1947. The contract does not specify the arbitration board shall determine the amount of damages if the person presenting the grievance was unjustly discharged. It does not in fact provide if just grievance be found how same shall be redressed. Reinstatement of employee is not provided for in case of unjust discharge.

Unless the arbitrator is given the power to award damages or order reinstatement, an award attempting to do this is void as beyond the power of the Board. Publishers' Ass'n of New York City v. New York Typographical Union No. 6, 168 Misc. 267, 5 N.Y.S.2d 847; Marchant v. Meade-Morrison Mfg. Co., 252 N.Y. 284, 169 N.E. 386.

In the instant case it is held that the Arbitrator's award ordering the reinstatement and the payment of damages is void for the reason that under the agreement the power of decision of these matters was not conferred.

It may be that we are mistaken in holding that the arbitrator did not have the power to order the reinstatement of plaintiff. It might be conferred by the contract authorizing the Union to challenge the justice of a discharge. However, if we be incorrect in this holding it can in no way affect the proper disposition of the cause. Defendant has consistently refused to recognize plaintiff as an employee since the 15th day of April, 1947.

The award clearly holds that plaintiff was not discharged for just cause. This was the very matter the arbitration was to determine; this the very grievance the Union had a right to present on behalf of plaintiff.

The award was against the defendant in this respect. It is contended that plaintiff was a supervisory employee, and the agreement for arbitration did not apply to him. In our opinion the greater weight of the evidence is to effect that he was not a supervisory employee. True for one day he may have been taking the place of a supervisory employee, but this in and of itself would not confer upon him the

status of a supervisory employee in the meaning of the contract. It is insisted the question of whether or not he was a supervisory employee was not submitted to the arbitrator.

In order to determine the justice of plaintiff's discharge it was necessary to determine whether or not he was protected by the contract. If he was a supervisory employee he might be discharged at the will of defendant and discharge would be perfectly lawful. There is no merit in the contention that it was shown as a matter of law plaintiff was a supervisory employee, and the points of error in this respect are overruled. No merit in the contention that the question of the character of plaintiff's employment was not in the issue under arbitration. Under the arbitration hearing defendant sought to justify plaintiff's discharge on the ground of his conduct toward Rosalia Lozano. Unless its right to discharge him was limited by the contract, his discharge required no justification.

■ In the state of the record reversible error was not committed by introducing the arbitrator's award. This award established a breach of defendant's contract of employment with plaintiff. The statements under the points of error raising this question fail to show that defendant either objected to or moved to strike out the award.

■ Points of error 5 and 6 are in substance to the effect that the Court erred in submitting issue No. 2 because no guide was given the jury to determine what was a just cause for discharge. No. 2 was: "Do you find from the preponderance of the evidence that on April 15, 1947, the plaintiff was discharged by defendant without just cause as that term was used and understood in the agreement between the company and the union dated December 19, 1946?"

This question has been heretofore discussed. The term "just cause" is in no way vague, indeterminate or indefinite. Where in our opinion the arbiter award authoritatively settled this question, it withdrew the matter from the determination of the Court. St. Louis, B. & M. Ry. Co. v. Booker, Tex.Civ.App., 5 S.W.2d 856; Ferguson v.

Ferguson, Tex.Civ.App., 127 S.W.2d 1018, 1019; Ferguson v. Ferguson, Tex.Civ.App., 93 S.W.2d 513.

The arbitration was not entirely without effect if it once be determined that the discharge was in violation of the contract, a basis for settlement is afforded—a basis which in the exercise of good faith by each party should enable them to arrive at a just settlement of their controversy. If it be determined that the discharge was just, this would and should end the matter.

■ Point of error No. 9 urges that plaintiff was not entitled to recover damages accruing after October 1947, because on that date defendant again discharged plaintiff. If our construction of the contract is correct, it is beyond the power of defendant after the award to again hire and discharge plaintiff. A reinstatement as distinguished from an offer to reinstate could arise only by virtue of a new contract between plaintiff and defendant.

■■ Point of error No. 10 presents a matter of more difficulty. It is as follows: "The Court erred in awarding to plaintiff any damages accruing subsequent to December 18, 1947, as plaintiff's alleged cause of action was based upon a contract between defendant and the United Textile Workers of America, which contract was terminated on December 12, 1947."

The judgment allowed damages accruing from April 15, 1947, to the date of the trial. This was arrived at by determining what wages plaintiff would have received and what he earned or could have earned by the use of ordinary diligence after his discharge. Defendant did not plead any mitigation by reason of earnings of plaintiff after his discharge; did not plead his duty to minimize his damages; it did not plead that the contract had been terminated before the trial. In the trial before the jury it did not prove that the contract had been terminated before the trial. When the court reopened the case on motion for judgment and allowed it to introduce evidence it likewise failed to introduce evidence showing a termination of the contract. There is not an intimation in the evidence as introduced that the copy of the

letter offered was ever mailed or delivered to the Union. The contract was by its terms to remain in force and effect until one or the other of the parties terminated the same in accordance with its terms. Its terms in this respect have been heretofore set out herein. Either party, by the terms of the contract, might terminate same by giving thirty days notice to the other prior to the anniversay date of the contract on December 19th. If in truth and in fact defendant had complied with this term of the contract and terminated same, it was a matter within its knowledge, the proof thereof being easy. Points 9 and 10 are the only points suggesting that the judgment exceeded the damages accruing from the breach of its contract. In our opinion the burden was upon the defendant to show that the contract had been terminated before the date of the trial.

The case of Eubank v. Galveston, H. & S. A. Ry. Co., Tex.Com.App., 59 S.W.2d 825 is deemed to have some bearing here. It was there held that a contract having a marked similarity was not a contract of life employment. It is thought it is a fair inference from the case that damages may be recovered to the date of the trial unless the contract had been sooner terminated in accordance with its provisions. It is thought that damages to the date of trial would be all that plaintiff would be entitled to recover.

All points of error urged by defendant and which have not been discussed herein have been carefully considered and are overruled.

There being no reversible error assigned, it is ordered that the judgment of the trial court be in all things affirmed.

### On Motion for Rehearing.

 Appellant among numerous other grounds urges that we erred in sustaining the judgment of the trial court insofar as same awarded damages for the period elapsing between December 18, 1947, and the date of the trial. Its contention is that as a matter of law the contract upon which appellee's contract depended was terminated by a letter addressed to the Union on October 28, 1947. In the original opinion we discussed this letter. Beyond any question, if delivered to the Union on that date it did terminate the contract as of December 18, 1947. In substance Special Issue No. 8 submitted important constituent elements of the loss of wages to plaintiff after December 18, 1947 to the date of the trial. If appellant excepted to the submission of the issue such exception does not appear in the transcript. If the evidence established that this letter had been communicated to the Union and same had been called to his attention it is thought the learned trial judge would not have submitted Special Issue No. 8. Appellant does not contend in its motion that the letter in question was introduced in evidence until long after the jury had been discharged, in fact, it is shown by the motion that as far as counsel went was to state he would offer the letter in evidence. Counsel for appellant claim an agreement with counsel for appellee. Counsel for appellee asserts that the statements in appellant's motion anent this matter are untrue. We have every confidence in the integrity and honor of counsel on each side. However, all we can do is to be governed by the evidence. This letter was not introduced in evidence on the trial of the case. In the Statement of Facts in regard to this letter appears the following: "On April 15, 1949, on the hearing of the motion for judgment held before the court on said date the defendant asked leave and was granted same to reopen the case and put in the following, which is marked as defendant's Exhibit No. D-3."

There follows in the Statement of Facts a copy of the letter. If appellant had offered the letter in evidence it would not have been necessary to have the case reopened.

We regret exceedingly this misunderstanding, but have no doubt that this court is without power to act in this matter on the unsupported statements of counsel.

 The motion is not altogether consistent in its attack upon the award of the Arbitrator for indefiniteness. It seems to agree with the court that under the agreement there is not power to order the reinstatement, but on the other hand, takes the

position that there was power to award a remedy for defendant's breach of its contract. We adhere to our view that it had not the power to award redress. If we be mistaken in this it is thought there was power to order appellee's reinstatement. As evidenced by its letter of October 15, 1947, addressed to appellee, the appellant persistently and consistently refused to abide by the award in this respect. It did not re-employ appellee nor did it offer to re-employ him. This award is declaratory in nature. A good faith effort to abide thereby in accordance with the contract would have probably terminated the controversy.

It is ordered that the motion for rehearing be in all things overruled.